# Stepp *v.* Croft, Appellant.

*Practice, C. P.—Trial—Protection of witness—Leading question.*

Where a question has been answered by a witness, and is again repeated, and the question is in itself leading, the court commits no error in disallowing the repetition.

*Slander—Damages—Mitigation of damages.*

The person who utters a slanderous story cannot hide himself behind the person who communicated it to him, whether the original author or not. If the author be responsible, and his name be communicated at the time the story is repeated, that fact can be used in mitigation of damages, but it is not a justification.

In an action for slander where the defendant does not allege that the story circulated by him was true, he cannot on appeal from a judgment on a verdict against him, allege that the court committed error in charging the jury that if the words were true, the defendant would be relieved, and that it was for the jury to say whether or not the words were true. The plaintiff could have complained of such instructions, if the verdict had been against him, but the defendant was in no way injured thereby.

*Slander—Damages—Special damages—Instructions.*

In an action of slander where the alleged slanderous words charge a crime, and no special damages are claimed in the plaintiff's statement, and there is no testimony in regard to special damages, a point offered by the defendant to the effect that as the plaintiff had shown no special injury he could recover no special damages, has no application to the case, and the court in affirming the point cannot be convicted of error in qualifying the answer by saying that if the slanderous words charge a crime, no special damages need be shown, but if they do not charge a crime then the plaintiff must prove special damages before he can recover.

Argued May 15, 1901. Appeal, No. 8, April T., 1901, by defendant, from judgment of C. P. Butler Co., Sept. T., 1899, No. 23, on verdict for plaintiff in case of H. L. Stepp v. James A. Croft. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Trespass to recover damages for slander. Before GREER, P. J.

At the trial it appeared that the plaintiff was a young physician, and the defendant a farmer.

The plaintiff set forth in his statement the alleged slander as follows :

That one Clara Stepp, an unmarried female residing in the

vicinity of Glade Mills, said county, " was pregnant, or in the
family way, by Dr. L. H. Stepp, and that she went to his of-
fice and told him her condition, and that Dr. L. H. Stepp said
to her that if that is the case I will have to help you out; "
" that Clara Stepp was in the family way by Dr. Stepp (mean-
ing the plaintiff), and that she went to his office and he helped
her to get rid of it; " " that Dr. Stepp (meaning the plaintiff)
got Clara Stepp in the family way, and that she went to his of-
fice and told him her condition, and that Dr. L. H. Stepp said,
if that is the case I will have to help you out of it; " " that
Clara Stepp was pregnant by Dr. Stepp (meaning the plaintiff),
and that Dr. Stepp treated her and helped her out of it by an
operation ; " or words to that effect, and meaning and intend-
ing thereby to imply, impute, insinuate and charge and make
public, that L. H. Stepp, the said plaintiff, had been guilty of
illicit carnal intercourse with the said Clara Stepp by reason of
which she had become pregnant by the said Dr. L. H. Stepp as
aforesaid, applied to the said Dr. L. H. Stepp, the plaintiff, to
rid her the said Clara Stepp of the said pregnancy by a criminal
abortion, and that the said Dr. L. H. Stepp then and there un-
dertook to relieve her, the said Clara Stepp, of the said pregnancy
by treating her and assisting her in producing a criminal abor-
tion of the said child, and was therefore guilty of the crime of
abortion, or an attempt to commit abortion.

When Dr. Caldwell was on the stand he was asked this ques-
tion :

Mr. Black : We propose to ask the witness on the stand if
Dr. Stepp had not inquired of him whether or not Clara Stepp
had been down at his office, and that at the same time such in-
quiry was made the plaintiff, Dr. Stepp, stated to the witness
on the stand that he had received a threatening letter from
this Clara Stepp charging him with being the father of her un-
born child or words to that effect; this to be followed by proof
that the witness on the stand afterwards communicated that
fact to others who communicated it to the defendant, to wit:
that Clara Stepp was blaming Dr. Stepp as being the father of
her unborn child, and that he had got a letter to that effect
threatening him and that the letter was a forgery and he de-
nied the charge ; this for the purpose of mitigating the charge
set forth in the narr. and eliminating malice from the defend-

ant for circulating the report which then and there was originated by the plaintiff himself.

Col. Thompson : However much the testimony, if delivered, would be competent, the objection now is to the method of securing it. Their own witness, Dr. Caldwell, on the stand has already stated in the hearing of the court and jury, under oath, the doctor having already testified all that Dr. Stepp said to him before and after reading the letter, and having stated positively that the doctor said nothing to him before the letter was read excepting to say, "I have a letter I want to read," and said nothing afterwards excepting to question the genuineness ; that the doctor stated he saw the signature but was prevented from giving what it was ; we object to the form of the question as it is suggestive and leads the witness and suggests to him to state what he has already stated did not occur after interrogation fully by both counsel and court on those points.

The Court : We have given the doctor every opportunity to state all the conversation between himself and Dr. Stepp at this time ; we have permitted the attorneys to ask more than once and the court has more than once tried to explain to the doctor that he should tell all that was said by Dr. Stepp both before and after reading the letter, and he has more than once said to the court that this was all that was said. I think it is not necessary to repeat it and the question rather in the form of a leading question. I think we will not hear it any further.

" Q. When Dr. Stepp called to see you there did he ask you whether Clara Stepp had been down to see you ?"

Objected to for the same reason as above and in addition that it is leading and suggestive.

The Court: We will sustain the objection on the ground that the question is leading and has been answered.

Bill of exceptions sealed November, 17, 1899, at request of defendant's counsel.

Mr. Black : We propose to ask the witness whether Dr. Stepp had not stated to him that Clara Stepp had written him a threatening letter charging him with being the father of the child ; this not for the purpose of justifying on part of defendant, but for the purpose of showing that the plaintiff originated the report himself, which was subsequently communicated to the defendant in this issue ; also for the purpose of mitigating damages.

Objected to for the same reasons as above.

The Court: We will not receive it. [2]

James Croft, the defendant, was asked by his counsel the following question:

" Q. At the time you made this statement had you heard that he had been down to Dr. Caldwell's ? "

Objected to ; that is irrelevant and immaterial ; the objection is this : If the defendant, when he uttered the slander, gave a respectable, responsible author, it is competent in mitigation of damages but it is competent in no case, and under no consideration, to state that he heard the rumor before ; rumors are never competent, and proof of special facts are not competent in the absence of justification; and therefore, whether he heard it or not is not material.

The Court: I do not think we will receive it; he says what he told them was on the strength of what Tom Hazlett told him ; I do not think it is competent. [3]

The defendant presented these points :

1. The plaintiff in this case has not shown that he suffered any special injury by the loss of patients and patrons in his profession and business, and having failed to trace any injury to the wrong of the defendant he can recover no special damages in this action. *Answer:* I do not quite understand this point. Where the charges that are claimed to have been made charge a criminal offense that can be punished by indictment, the law makes such words actionable in themselves, and in that case it is not necessary to prove special damages, but where a man has made charges against another that are not criminal then he must prove special damages before he can recover. With this explanation, we affirm this point. [4]

2. The element of malice is absolutely essential to constitute slander, and if the jury find that the defendant did not maliciously utter the words complained of, but only repeated what had been told him and gave his author, this would eliminate the idea of malice and should be considered in mitigation of damages. *Answer:* We say, gentleman, that we do not think this would eliminate the idea of malice, but should be considered in mitigation of damages. With that qualification we affirm that point. [5]

3. If the jury believe from the evidence that the plaintiff, by

going first to Dr. Caldwell and then to Dr. Merschon and by the inquiries made of and statements to them, originated and gave publicity to the rumors and suspicions that Clara Stepp charged him with being the father of her unborn child, and these rumors and suspicions were communicated to and known by the defendant, and he uttered them as he had received them, the element of slander would be wanting and the verdict should be for the defendant. *Answer:* A plaintiff in a slander suit cannot recover damages for slanderous words originated and circulated himself, and if there is sufficient proof that the plaintiff did originate and' circulate the words and charges asserted in his narr., the verdict must be for the defendant. [6]

The court charged in part as follows:

[The law presumes that every man in this country is innocent until he is found guilty and the law presumes that a plaintiff in a slander case is innocent of the charges made against him until the party charging him proves him guilty or attempts to do it; then he can rebut, if possible, by testimony showing that he is not guilty.] [7]

[The defendant could set up, if he desired, a plea of justification; and show that these words are true, that would relieve the defendant from any responsibility in the case. It is for you to say whether or not these words are true.] [8]

[The defendant, when on the stand, was not asked any question concerning the truth of the statements of the other witnesses, Walters, Boher, Hager, and others, and we say to you, as a question of law, where a party defendant goes on the stand, and makes himself a witness, that any declaration made against him, that is not denied by him, or contradicted by some other proof, you would have a right to believe it as proven. He did not deny these other witnesses with respect to what they testified to.] [9]

[Reputation of a person can only be proven in courts of justice by witnesses having knowledge of the man.] [10]

Verdict and judgment for plaintiff for $871.68. Defendant appealed.

*Errors assigned* were (1–3) rulings on evidence, quoting the bill of exceptions. (5–10) Above instructions, quoting them.

(11) In giving undue prominence and emphasis to plaintiff's testimony and theory of the cases.

*Lev. McQuestion,* with him *J. C. Vanderlin,* for appellant.— Under the general issue in slander, the defendant may prove, in mitigation of damages, that when the words were uttered, a general rumor or report existed in the neighborhood that the plaintiff was guilty of the offense charged : Pease v. Shippen, 80 Pa. 514; Minesinger v. Kerr, 9 Pa. 313.

Especially should this be the law when the offense charged originated with the plaintiff in the action : Stees v. Kemble, 27 Pa. 112.

The plaintiff can only impute the slander to him who uttered it, if the latter does not mention the name of the person from whom he heard it; if he gives the name of the author at the time of uttering it, it constitutes a good defense : Smith v. Stewart, 5 Pa. 374.

Where the general charge fails to cover the points, the parties are entitled to a definite answer, either in affirmance or refusal : Somer v. Gilmore, 160 Pa. 129; Whitmire v. Montgomery, 165 Pa. 261; Swank v. Phillips, 113 Pa. 482; Wallace v. Rodgers, 156 Pa. 395.

Undue prominence given to the plaintiff's theory in the case is ground for reversal : Tietz v. Philadelphia Traction Co., 169 Pa. 516; Goerson v. Com., 99 Pa. 388; Minick v. Gring, 1 Pa. Superior Ct. 489.

*J. M. Thompson,* of *Thompson & Son* and *S. F. Bowser,* with them *H. H. Goucher,* for appellee.—Where the general issue only is pleaded the defendant may assail the general character of the plaintiff, but he cannot give evidence of particular reports, nor of the general currency of the particular charge which he took up and indorsed : Lukehart v. Byerly, 53 Pa. 418; Long v. Brougher, 5 Watts, 439; Conroe v. Conroe, 47 Pa. 201; Smith v. Stewart, 5 Pa. 372; Steinman v. McWilliams, 6 Pa. 173; Drown v. Allen, 91 Pa. 394; Pease v. Shippen, 80 Pa. 513.

One who repeats a slanderous accusation is guilty and answerable in damages, and the fact that he did not originate the slander will only go in mitigation of damages : Wallace v. Rodgers, 156 Pa. 395; Price v. Conway, 134 Pa. 340.

OPINION BY BEAVER, J., July 25, 1901:

This was an action of slander brought by the plaintiff, a physician, against the defendant for a slander affecting his moral and professional character, the details of which were circulated by the defendant in the community in which the plaintiff lived and practised his profession. The defendant did not seek to justify, nor did he deny the fact that he had circulated the slanderous story but endeavored to mitigate the damages by showing that the story had been told him by a reputable person and that the name of the author was given at the several times when he repeated it. As to this there was contradictory testimony. The plaintiff assumes, in the history of the case, in some of the assignments of error and in his argument, that the slanderous story, of which the plaintiff complains, was started by himself in several conferences which he had with brother physicians as to what was best to be done in regard to a letter which he believed to be a forgery, in which the immorality and criminality which were the basis of the slander related by the defendant were alluded to. The assumption of the plaintiff in this regard, however, was not based upon the facts. The conference between the plaintiff and his brother physicians, as testified to by them, was not as to this story but as to the author of the letter in which it was alluded to, and what was best to be done as to the alleged forgery.

The facts do not bring the case within the rulings of Pease v. Shippen, 80 Pa. 514, in which it is held that "under the general issue, in slander, the defendant may prove, in mitigation of damages, that when the words were uttered, a general rumor or report existed in the neighborhood that the plaintiff was guilty of the offense charged. If these suspicions and reports originated with the plaintiff herself, it was material in lessening the damages." The plaintiff had the benefit of the testimony of the physicians with whom the plaintiff consulted. As bearing upon this question, the defendant assigns for error the so-called refusal of the court to admit an offer as to the testimony of one of these witnesses. The name of the witness is not given in the offer or in connection with the specifications of error. We infer, however, that it relates to the testimony of Dr. Caldwell. The court, however, did not exclude his testimony. It was admitted in full and the court assisted in bring-

ing out all the facts of which the doctor had knowledge and it was only after his knowledge had been exhausted and he declared that he knew nothing more, that the court put a stop to the examination. The trial judge simply prevented the witness from being tortured and led. The question, concerning which the controversy arose, had been asked and answered and was, in addition, leading, and for these reasons the court refused to allow it to be repeated.

The person who utters a slanderous story cannot hide himself behind the person who communicated it to him, whether the original author or not. If the author be responsible and his name be communicated at the time the story is repeated, that fact can be used in mitigation of damages, but it is not a justification. The fact as to whether or not the defendant communicated the name of the author is assumed by the defendant to be undisputed. Two of the principal witnesses of the plaintiff, however, deny that the defendant gave any authority for the story which he detailed to them.

The sixth, seventh and ninth assignments of error do not require special comment. There is nothing erroneous in anything therein complained of.

In the eighth assignment the following paragraph in the charge of the court is assigned for error: "The defendant could set up, if he desired, a plea of justification and show that these words are true: that would relieve the defendant from any responsibility in the case. It is for you to say whether or not these words are true." There was no allegation on the part of the defendant that the story circulated by him was true and there was, therefore, nothing to submit to the jury upon that question, but the defendant was not in any way injured thereby. The plaintiff could have complained of it, if the verdict had been for the defendant, but we fail to see how the defendant's case could by any possibility have been injured thereby.

The tenth assignment of error separates one sentence from its context. If the following sentence had been quoted in connection with it, it would have shown that the court referred to the knowledge of reputation rather than to the personal knowledge of the individual. In no event, however, could the defendant be harmed by it, for all his witnesses who testified as to character said they were personally acquainted with the plaintiff.

We have read the charge very carefully with reference to the eleventh assignment of error. It is without any foundation whatever. The court read the testimony of two of the plaintiff's witnesses but, in connection with it, read that of the defendant who had testified in regard to what he had told them. Throughout the entire charge there is apparent not only the utmost fairness on the part of the court but a manifest and persistent effort to eliminate from the minds of the jury any feeling of bias or prejudice.

The only serious question in the case arises under the fourth assignment of error. The defendant's first point for charge was: "The plaintiff in this case has not shown that he suffered any special injury by the loss of patients and patrons in his profession and business and, having failed to trace any injury to the wrong of the defendant, he can recover no special damages in this case." This was answered as follows: "I do not quite understand this point. Where the charges that are claimed to have been made charge a criminal offense that can be punished by indictment, the law makes such words actionable in themselves, and in that case it is not necessary to prove special damages; but where a man has made charges against another that are not criminal, then he must prove special damages, before he can recover. With this explanation, we affirm this point." The point, as an abstract question of law, is correct and required an affirmative answer. It had no application, however, to the present case. No special damages were claimed in the plaintiff's statement. There was no testimony whatever in regard to special damages. The court, in the general charge, had stated that the words complained of contain a charge of a heinous crime which would in itself be slander, without proof of special damages. The question of special damages was, therefore, nowhere in the case and it was probably for this reason that the court made the qualified explanation as to not understanding the point. The qualification, taken in connection with the charge of the court, in regard to general and exemplary damages, as well as to there being no evidence of special damages, relieves the answer of the difficulty which would otherwise be found in the qualification. We cannot see that the defendant suffered in any way thereby. This does not and is not to be regarded as modifying or limiting in any way what

we held in Leitz v. Holiman, 16 Pa. Superior Ct. 272, where a similar point was refused. The jury evidently believed the plaintiff's witnesses and found that the defendant was guilty of the slander with which he was charged. This being so, the amount of the verdict is by no means extravagant—indeed it is quite the reverse—in view of the slander which charged upon a young physician two of the most serious crimes of which a member of his profession can be guilty.

Upon a consideration of the whole case, we can find no error of which the defendant has any right to complain. The assignments of error are all overruled.

Judgment affirmed.